**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | |
|---|---|
| **RICHARD JERRY MCLEOD**, | |
| Plaintiff, | |
| v. | Civil Action No. 7:18-CV-66 |
| **JERRI DUKES, ET AL.**, | |
| Defendants. | |

**ORDER**

Plaintiff Jerry McLeod filed a pro se Complaint in this Court on April 24, 2018. (Doc. 1). Along with his Complaint, Plaintiff filed a Motion for Leave to Proceed In Forma Pauperis ("IFP"). (Doc. 2). After a hearing on August 15, 2018, the Court found that Plaintiff is unable to pay the filing fee by reason of impoverishment and granted the Plaintiff's motion. (Doc. 23).

Upon conducting a preliminary review of Plaintiff's Complaint as required by 28 U.S.C. § 1915A(a), the Court finds that many of Plaintiff's claims must be dismissed for failure to state a claim upon which relief may be granted.

**I.      Motion to Proceed IFP**

When considering a Motion to Proceed IFP filed pursuant to 28 U.S.C. § 1915(a), "[t]he only determination to be made by the court . . . is whether the statements in the affidavit satisfy the requirement of poverty." Martinez v. Kristi Kleaners, Inc., 364 F.3d 1305, 1307 (11th Cir. 2004) (internal citation omitted).

The Court should accept statements contained in an IFP affidavit, "absent serious misrepresentation." Id. Although a litigant does not have to prove he is "absolutely destitute" to qualify under § 1915(a), he must show that "because of his poverty, [he] is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents." Id. (citing Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 338–40 (1948)).

After reviewing the application to proceed IFP and the supporting affidavit, the Court is satisfied that Plaintiff is sufficiently impecunious to warrant allowing him to prosecute his case at the taxpayers' expense. Plaintiff's affidavit in support of his motion to proceed IFP indicates that he has not held a paying job in the last two years, and his sole source of income is the $987 in retirement income and food stamps he receives each month. The Court finds that Plaintiff is unable to pay the costs and fees associated with this lawsuit and also manage the expenses of his household. Accordingly, Plaintiff's Motion to Proceed IFP (Doc. 2) is **GRANTED**. This case shall proceed without the prepayment of fees.

## II. Preliminary Review

Because Plaintiff is proceeding IFP, the Court is required to screen the Complaint and to dismiss it, or any portion thereof, if it (1) is frivolous or malicious; (2) fails to state a claim for which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). A claim is frivolous when it appears from the face of the complaint that the factual allegations are "clearly baseless" and the legal theories "indisputably meritless," or

2

when it is apparent that "the defendant's absolute immunity justifies dismissal before service of process." Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). A complaint fails to state a claim on which relief may be granted when it does not include sufficient factual matter to permit a "reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Because Plaintiff is proceeding pro se, his "pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) (citations omitted).

### A.    Plaintiff's Complaint

Plaintiff filed his Complaint on April 24, 2018, alleging that his property was arbitrarily selected for a tax foreclosure sale. In his Complaint, Plaintiff explicitly sets forth two counts: (1) unconstitutional search and seizure in violation of his Fourth and Fourteenth Amendment Rights under the United States Constitution and Article I, Paragraph XIII of the Georgia Constitution; and (2) violation of his right to privacy under the Fourteenth Amendment of the United States Constitution and Article I, Section I, Paragraph I of the Georgia Constitution. Plaintiff also alleges that his Fourth and Fourteenth Amendment rights under the United States Constitution were violated in contravention of 42 U.S.C. §§ 1983, 1985, and 1986. Plaintiff argues that he is entitled to compensatory, punitive, and emotional distress damages in addition to injunctive relief and a declaratory judgment.

3

In addition to the facts and claims relating to the tax sale of his property, Plaintiff's Complaint discusses several other incidents: (1) the alleged illegal taking of Plaintiff's dogs and other personal property; (2) the alleged destruction of Plaintiff's property by Brooks County Deputies during the execution of a search of his property; (3) the alleged arrest and false imprisonment of Plaintiff for more than sixty days; (4) the alleged wrongful disconnection of Plaintiff's electricity by Colquitt EMC; (5) an alleged attempt to condemn Plaintiff's home; and (6) alleged violation of the Americans with Disabilities Act. The Court has considered the potential claims arising out of each incident in conducting its preliminary review.

The following Defendants are named: Jerri Dukes, former Tax Commissioner of Brooks County; Becky Rothrock, current Tax Commissioner of Brooks County; Howell L. Watkins II Realty Corporation and Howell L. Watkins II; Mike Dewey, individually and in his official capacity as Brooks County Sheriff and Animal Control Director; Joe Wheeler, Brooks County Sheriff's Deputy; Eugene Owen, Brooks County Sheriff's Deputy; Ed Melton, Brooks County Sheriff's Deputy; Lonnie Doe, Brooks County Sheriff's Deputy; John Ulm, Jail Administrator with the Brooks County Sheriff's Office; Willie Clemmons, police officer with the City of Quitman Police Department; the City of Quitman, Georgia, and its mayor and council members; Brooks County, c/o Myra Exum as Chairperson for Brooks County Commissioners; Becky Malpus, individually and as Agent for Thomasville Human Society; Thomasville, Thomas County Humane Society Inc.; Chandler Giddes, Thomas County Animal Control Director; Charles Devane, d/b/a B.A.R.C.

Humane Society; Jennifer Glover, individually and as agent for Moultrie, Colquitt County Humane Society Inc.; Moultrie, Colquitt County Humane Society Inc.; Billy Ingram, Brooks County Building Inspector; Brooks County; Larry Nichols, individually and as General Manager of Colquitt EMC; David Crosby, Brooks County Magistrate Judge; Ginger S. Forgione, Clerk of Brooks County Superior Court; and Robert Bruce, Mark Nichols, Clint Nichols, and Tyler Nichols in their individual capacities. Plaintiff also names as defendants "John or Jane Does 1-50, Deputies, Brooks County Sheriff's Office, and employees of City of Quitman, Brooks County, Thomasville Thomas County Humane Society, Moultrie Colquitt County Humane Society, Howell L. Watkins II, Moultrie Colquitt County Humane Society, City of Quitman and Robert Bruce, in their individual capacities."

### B.    Claims Against Defendant Brooks County

In his Complaint, Plaintiff alleges that Defendant Brooks County is liable to him for violations of his Fourth and Fourteenth Amendment rights, pursuant to 42 U.S.C. §§ 1983, 1985–86.

#### 1.    42 U.S.C. § 1983

Section 1983 of the Civil Rights Act of 1871 creates a cause of action for the deprivation of rights, privileges, or immunities secured by the federal Constitution or federal law, by any person acting under color of state law.  42 U.S.C. § 1983; Arrington v. Cobb Cty., 139 F.3d 965, 872 (11th Cir. 1998).  To state a Section 1983 claim against a municipality, such as Brooks County, Plaintiff must allege that: (1) his constitutional rights were violated; (2) the County had a custom or

policy that constituted deliberate indifference to his constitutional rights; and (3) the policy or custom caused the violation. McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). An underlying constitutional injury must be found before examining the municipality's policy or custom. Rooney v. Watson, 101 F.3d 1378, 1381 (11th Cir. 1996).

Upon examination of the Complaint, the Court concludes that Plaintiff fails to state a claim upon which relief may be granted concerning his Fourth and Fourteenth Amendment rights.

a.    Fourth Amendment

Plaintiff alleges that Brooks County violated his Fourth Amendment rights by seizing his dogs and other personal property illegally. The Fourth Amendment guarantees the right to be free of unreasonable searches and seizures and mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. The Fourth Amendment prohibition on unreasonable searches and seizures is made applicable to the states by the Fourteenth Amendment. Soldal v. Cook County, 506 U.S. 56, 61 (1992). "The chief evil against which the Fourth Amendment is directed is a government agent's warrantless entry into a person's home." Feliciano v. City of Miami Beach, 707 F.3d 1244, 1251 (11th Cir. 2013) (internal quotation marks omitted). A warrantless and nonconsensual search or seizure "violates the Fourth Amendment unless it is supported by both probable cause and exigent circumstances." Id.

Plaintiff concedes that the search of his property and seizure of his dogs was conducted pursuant to a warrant but asserts that the warrant was invalid for several reasons. First, Plaintiff alleges that the warrant was facially invalid because the warrant itself "stated no valid arguable probable cause for its issuance." (Doc. 1, p. 4). Further, Plaintiff alleges that the warrant "was overbroad and lacked particularity." (Doc. 1, p. 31). Plaintiff alleges that an anonymous source reported that one of Plaintiff's dogs had been seen outside the fence of Plaintiff's property without a collar, and that this tip alone does not support a warrant allowing deputies to seize all dogs on his property. (Doc. 1, p. 31). "[A] warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." Massachusetts v. Sheppard, 468 U.S. 981, 988 n.5 (1984).

Second, Plaintiff contends that the warrant did not have a proper motive or purpose and "was issued and executed solely to facilitate the illegal eviction of Plaintiff from the disputed Grooverville Methodist Church property subject to litigation." (Doc. 1, p. 31). The facts contained in the Complaint concerning the invalid warrant and the seizure of Plaintiff's dogs create a reasonable inference that Plaintiff's rights under the Fourth Amendment were violated.

While Plaintiff has adequately alleged a violation of his Fourth Amendment rights, Plaintiff has fallen short of establishing that Brooks County has a custom or policy in place that caused his Constitutional injury. Rather, Plaintiff states generally that Brooks County failed "to provide any meaningful or minimal training . . . to enable or require[] [Mike] Dewey to conduct animal control duties [sic] in a

responsible and legal manner in compliance with the Georgia Animal Protection Acts and the Fourth and Fourteenth Amendments. . . " (Doc. 1, p. 21). Because any violation of Plaintiff's Fourth Amendment rights was not caused by a custom or policy of Brooks County, but instead by a plan devised by some Defendants, Plaintiff has failed to state a § 1983 claim under the Fourth Amendment against Defendant Brooks County. This claim is **DISMISSED without prejudice**.

### b. Fourteenth Amendment

Plaintiff alleges that his rights under the Fourteenth Amendment to the United States Constitution were violated when his property was unlawfully searched and seized, and also when his electricity was disconnected by Colquitt EMC. (Doc. 1, pp. 29, 37). The Fourteenth Amendment guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Because the Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as 'state action.'" Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 924 (1982). "The Due Process Clause provides two different kinds of constitutional protections: procedural due process and substantive due process." Maddox v. Stephens, 727 F.3d 1109, 1118 (11th Cir. 2013). In addition to the Fourteenth Amendment's due process rights, the Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Court has considered all of Plaintiff's possible claims under the Fourteenth Amendment.

## i.    *Procedural due process*

In order to state a procedural due process violation, Plaintiff must allege: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process. <u>Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami</u>, 637 F.3d 1178, 1186 (11th Cir. 2011) (internal quotation marks omitted). Plaintiff's Complaint plausibly alleges the first two elements, based on Defendants' seizure of his dogs and personal property, in which Plaintiff has a cognizable property interest. <u>O'Neill v. Louisville Jefferson Cnty. v. Metro Gov't</u>, 662 F.3d 723, 733 (6th Cir. 2011). However, the Complaint does not plausibly allege that Plaintiff was afforded inadequate process.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." <u>Reams v. Irvin</u>, 561 F.3d 1258, 1263 (11th Cir. 2009) (internal quotation marks omitted). "[P]rocedural due process violations do not become complete unless and until the state refuses to provide due process." <u>McKinney v. Pate</u>, 20 F.3d 1550, 1563 (11th Cir. 1994) (internal quotation marks omitted). Thus, where "an adequate post-deprivation process is in place under state law, no federal procedural due process claim exists." <u>Foxy Lady, Inc. v. City of Atlanta</u>, 347 F.3d 1232, 1239 (11th Cir. 2003).

"The state of Georgia has created a civil cause of action for the wrongful conversion of personal property." <u>Lindsey v. Stored</u>, 936 F.2d 554, 561 (11th Cir. 1991) (citing O.C.G.A. § 51-10-1). The Eleventh Circuit has recognized that "[t]his statutory provision covers the unauthorized seizure of personal property," such as

Plaintiff's dogs and other personal property, by state officials. Id. "Therefore, the state has provided an adequate postdeprivation remedy when a plaintiff claims that the state has retained his property without due process of law." Id.; see also Burlison v. Rogers, 311 F. App'x 207, 208 (11th Cir. 2008) (finding that "as long as some adequate postdeprivation remedy is available, no due process violation has occurred."). Accordingly, to the extent Plaintiff intends to state a § 1983 claim for a procedural due process violation against Brooks County based on the seizure of his dogs and other personal property, that claim is **DISMISSED without prejudice**.

*ii.     Substantive due process*

"The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are implicit in the concept of ordered liberty." McKinney v. Pate, 30 F.3d 1550, 1556 (5th Cir. 1994) (internal quotation marks omitted). In contrast to procedural due process claims, a fundamental right "is protected against certain government actions regardless of the fairness of the procedures used to implement them." Id. (internal quotation marks omitted).

The Complaint does not allege that Brooks County, or any other Defendant, had a policy or custom in place that infringed upon any fundamental right. Accordingly, to the extent Plaintiff attempts to raise a substantive due process claim against Defendant Brooks County, that claim is **DISMISSED without prejudice**. Windwalker v. Governor of Ala., 579 F. App'x 769, 773 (11th Cir. 2014) (affirming dismissal of substantive due process claim where alleged right was not fundamental); Dias v. City and County of Denver, 567 F.3d 1169, 1181 (10th Cir.

2009) (holding that plaintiff failed to allege a fundamental right based on "the human/companion animal bond").

### iii. *Equal protection*

Likewise, Plaintiff has failed to establish that Brooks County, or any other Defendant, is liable for violating his rights under the Equal Protection Clause of the Fourteenth Amendment. A plaintiff bringing an equal protection claim under the Fourteenth Amendment must prove either that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment[,] Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000), or that he "was treated differently than similarly situated persons [and] the defendant unequally applied [a] facially neutral statute for the purpose of discriminating against [him]" Strickland v. Alderman, 74 F.3d 260, 264 (11th Cir. 1996). Here, Plaintiff states that he is deprived of his "Fourteenth Amendment right to equal access to electricity," but has not alleged that Defendants treated him differently than similarly situated individuals. (Doc. 1, p. 29). Nor has Plaintiff alleged that Defendants have unequally applied a facially neutral statute in an effort to discriminate against him. As a result, Plaintiff cannot maintain a § 1983 claim against Defendant Brooks County for violation of the Equal Protection Clause. This claim is **DISMISSED without prejudice**.

### 2. 42 U.S.C. § 1985

Plaintiff claims that Brooks County is liable under 42 U.S.C. § 1985 for conspiracy to interfere with his civil rights. A review of the statute and the facts

11

alleged convinces the Court that Plaintiff intends to state a claim for relief under §
1985(3). "To state a claim under § 1985, a plaintiff must allege: (1) defendants
engaged in a conspiracy; (2) the conspiracy's purpose was to directly or indirectly
deprive a protected person or class the equal protection of the laws, or equal
privileges and immunities under the laws; (3) a conspirator committed an act to
further the conspiracy; and (4) as a result, the plaintiff suffered injury to either his
person or his property, or was deprived of a right or privilege of a citizen of the
United States." Jimenez v. Wellstar Health Sys., 596 F.3d 1304, 1312 (11th Cir.
2010).

Plaintiff has alleged almost all defendants engaged in a conspiracy to
deprive plaintiff of his real and personal property for the benefit of Howell L.
Watkins II. Plaintiff also claims to be both visually and hearing-impaired, which may
qualify him as a member of a protected class. Albertson's, Inc. v. Kirkingburg, 527
U.S. 555, 566 (1999) (noting that the determination of the existence of a disability
must be done on a case-by-case basis under the ADA). However, Plaintiff has not
alleged that the purpose of the conspiracy was to deprive him of the equal
protection of the laws. Rather, Plaintiff contends that the purpose of Ingram's
conspiracy "is to facilitate the illegal eviction and to further harass and intimidate
the Plaintiff." (Doc. 1, p. 9). As a result, Plaintiff has not stated a claim upon which
relief may be granted under § 1985 against Defendant Brooks County. This claim
is **DISMISSED without prejudice**.

3.     42 U.S.C. § 1986

42 U.S.C. § 1986 creates a cause of action against anyone who has knowledge of a § 1985 conspiracy and the power to prevent such a conspiracy, but neglects or refuses to do so. <u>See</u> 42 U.S.C. § 1986. As previously discussed, Plaintiff has failed to demonstrate a § 1985 conspiracy. Without the existence of a § 1985 conspiracy, Plaintiff cannot state a claim under § 1986. <u>See</u> 42 U.S.C. § 1986; <u>Johnson v. Wilbur</u>, 375 F. App'x 960, 964 (11th Cir. 2010). Plaintiff's claim pursuant to 42 U.S.C. § 1986 is **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted.

### C.     Claims Against Defendant Billy Ingram

Plaintiff has sued Defendant Billy Ingram for allegedly conspiring with co-Defendants Mike Dewey and Howell Watkins to condemn Plaintiff's property and to disconnect Plaintiff's electricity. (Doc. 1, p. 5). Plaintiff alleges that Ingram, in his role as a building inspector employed by Brooks County, contacted Colquitt EMC to request that Plaintiff's electricity be disconnected for the purpose of facilitating an "illegal eviction" of Plaintiff from his property and to "further harass and intimidate" Plaintiff. (Doc. 1, p. 1). Plaintiff sues Defendant Ingram for violating his rights under the Fourth and Fourteenth Amendments, pursuant to §§ 1983, 1985, and 1986.

In cases of negligent and intentional conduct by state employees, the U.S. Supreme Court has held that a postdeprivation remedy, such as a tort remedy, is all a plaintiff is due. <u>Zinermon v. Burch</u>, 494 U.S. 113, 129-30 (1990). An

"intentional deprivation of property does not give rise to a violation of the Due Process clause if the state provides an adequate postdeprivation remedy." Hudson v. Palmer, 468 U.S. 517, 533 n.14 (1984). In order to be an adequate postdeprivation remedy, "the state procedure need not provide all the relief available under section 1983." Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000). "Instead, the state procedure must be able to correct whatever deficiencies exist and to provide plaintiff with whatever process is due." Id.

Georgia courts have recognized the tort of wrongful termination of utilities. See Freeman v. Macon Gas & Co., 126 Ga. 843, 845-46 (1906); Hunnicutt v. Ga. Power Co., 168 Ga. App. 525 (1983); Walton Elec. Membership Corp. v. Snyder, 270 Ga. 62 (1998) (recognizing an electric membership corporation is subject to tort liability for wrongful termination of electric service and may be liable for punitive damages in such an action). Therefore, an adequate postdeprivation remedy exists under state law. Accordingly, to the extent Plaintiff intends to state a § 1983 claim for a procedural due process violation against Billy Ingram based on the wrongful termination of Plaintiff's electricity, that claim is **DISMISSED without prejudice**.

Additionally, Plaintiff cannot state a claim under 42 U.S.C. §§ 1985 or 1986 upon which relief may be granted against Defendant Ingram. As discussed, *supra*, pp. 11-13, Plaintiff has not alleged that the purpose of the conspiracy was to deprive him of the equal protection of the laws. Accordingly, these claims are **DISMISSED without prejudice.**

**D.    Claims Against Defendants Mike Dewey, Joe Wheeler, Eugene Owen, Ed Melton, and Lonnie Doe**

Plaintiff has sued Brooks County Sheriff Mike Dewey and four of his deputies: Joe Wheeler, Eugene Owen, Ed Melton, and Lonnie Doe.

Plaintiff also alleges that Defendants Dewey, Wheeler, Owen, Melton, and Doe are liable for violating his rights under the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, based on their respective roles in the conspiracy to seize and destroy Plaintiff's personal property.

1.    Defendant Mike Dewey

Plaintiff sues Mike Dewey both in his role as Sheriff of Brooks County and as acting Director of Brooks County Animal Control. Plaintiff alleges that Dewey "planned, ordered, orchestrated, executed and directly supervised the conduct of his deputies, agents and surrogates in conducting the February 28, 2017 search and seizure of McLeod's personal property including the seizure of all of McLeod's dogs without arguable probable cause, and the destruction of McLeod's dwelling." (Doc. 1, p. 8). Plaintiff also appears to allege several additional claims against Dewey: (1) Dewey "did with wanton malice aforethought commit acts of slander and defamation specifically contrived to damage Plaintiff's rep[]utation and ensure that he was unable to secure a bond" (Doc. 1, p. 29); (2) Dewey conspired with co-defendant Ingram to condemn Plaintiff's home (Id. at p. 5); (3) Dewey denied Plaintiff bail and is responsible for Plaintiff's false imprisonment of more than sixty

days (Id. at pp. 4, 6); (4) Dewey orchestrated the disconnection of Plaintiff's electricity (Id. at p. 32); and (5) Dewey participated in numerous conspiracies with other co-defendants in which Plaintiff was a victim. In sum, Plaintiff has alleged that Dewey, along with co-Defendant Watkins, is responsible for nearly every alleged wrongdoing in Plaintiff's complaint by either conspiring with or directing other co-defendants whose actions were at their behest.

a.    Official Capacity

Plaintiff sues Defendant Dewey in both his official and individual capacity. However, Plaintiff cannot sustain a § 1983 claim against Defendant in his official capacity. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712-13 (1999). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983. Id. at 71. Here, the State of Georgia would be the real party in interest in a suit against Defendant in his official capacity as Sheriff of Brooks County. Accordingly, the Eleventh Amendment immunizes Dewey from suit in his official capacities. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims against Defendant Dewey in his official capacity, and these claims should be and are hereby **DISMISSED**.

### b. Individual Capacity

#### i. *42 U.S.C. § 1983*

In order to state a claim under 42 U.S.C. § 1983 against an individual, a plaintiff must establish that: "(1) . . . the conduct complained of was committed by a person acting under color of state law; and (2) . . . this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535 (1981). Plaintiff has adequately alleged that Defendant Dewey was acting under color of law as Brooks County Sheriff.

##### 1) Fourth Amendment

According to the allegations in Plaintiff's Complaint, Defendant Dewey orchestrated a search based on an invalid warrant that had no legitimate objective. Plaintiff has alleged that the resulting search and seizure of his dogs and damage to property was unconstitutional. These allegations are sufficient to create a reasonable inference that Defendant Dewey deprived Plaintiff of his rights under the Constitution. Accordingly, Plaintiff's Fourth Amendment § 1983 claim against Defendant Dewey may proceed for further factual development.

##### 2) Fourteenth Amendment

Plaintiff alleges that he was denied bail at the request of Defendant Dewey, and, as a result, spent more than sixty days in jail. (Doc. 1, p. 6). The Eleventh Circuit recognizes a "constitutional right to be free from continued detention after

17

it was or should have been known that the detainee was entitled to release" under the Fourteenth Amendment. Cannon v. Macon County, 1 F.3d 1558, 1563 (11th Cir. 1993); see also Campbell v. Johnson, 586 F.3d 835, 840 (11th Cir. 2009). A claim of false imprisonment under § 1983 "requires a showing of common law false imprisonment and a due process violation under the Fourteenth Amendment." Campbell, 586 F.3d at 840. "The elements of common law false imprisonment are intent to confine, an act resulting in confinement, and the victim's awareness of the confinement." Id. To establish a due process violation, Plaintiff must prove that Sheriff Dewey acted with deliberate indifference. Id. This means that Sheriff Dewey "had subjective knowledge of a risk of serious harm and disregarded that risk by actions beyond mere negligence." Id.

Here, Plaintiff's allegation that he was denied bond and detained for sixty days, without more, is insufficient to establish a constitutional violation. Furthermore, even if Plaintiff established a claim under the Fourteenth Amendment, he does not allege any facts which could give rise to an inference that Defendant Dewey was deliberately indifferent. Accordingly, Plaintiff's § 1983 claim against Defendant Dewey for violation of his Fourteenth Amendment must be and is hereby **DISMISSED without prejudice**.

ii.    *42 U.S.C. §§ 1985 and 1986*

Plaintiff cannot state a claim under 42 U.S.C. §§ 1985 or 1986 upon which relief may be granted against Defendant Dewey. As discussed, *supra*, pp. 11-13, Plaintiff has not alleged that the purpose of the conspiracy to seize his property

18

was to deprive him of the equal protection of the laws. Accordingly, these claims are **DISMISSED without prejudice**.

### 2. Defendant Joe Wheeler

Plaintiff alleges that Defendant Wheeler "personally planned, orchestrated, and executed and directly supervised the conduct of the deputies[,] agents[,] and surrogates in the illegal search, seizure and destruction of [Plaintiff's] property on February 28, 2017 at the behest of Howell L. Watkins II and Mike Dewey." (Doc. 1, pp. 8-9). Plaintiff contends that Defendant Wheeler is liable in his individual capacity under 42 U.S.C. §§ 1983, 1985, and 1986 for violating his rights pursuant to the Fourth and Fourteenth Amendments to the Constitution.

### a. 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983 against an individual, a plaintiff must establish that: "(1) . . . the conduct complained of was committed by a person acting under color of state law; and (2) . . . this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535 (1981). Plaintiff has adequately alleged that Defendant Wheeler was acting under color of law as a Brooks County Sheriff's Deputy.

### 1) Fourth Amendment

According to the allegations in Plaintiff's Complaint, Defendant Wheeler "personally supervised and participated in the intrusive invasion of Plaintiff's privacy and the illegal search[,] seizure[,] and destruction of Plaintiff's property."

(Doc. 1, p. 9). Plaintiff has alleged that the warrant was invalid, and that the resulting search and seizure of his personal property was unconstitutional. Further, Plaintiff alleges that Defendant Wheeler demolished his fence and gates. These allegations are sufficient to create a reasonable inference that Defendant Wheeler deprived Plaintiff of his rights under the Constitution. Accordingly, Plaintiff's Fourth Amendment § 1983 claim against Defendant Wheeler may proceed for further factual development.

### 2)    Fourteenth Amendment

Plaintiff has not stated a claim for relief under § 1983 for violation of his Fourteenth Amendment rights against Defendant Wheeler for the reasons discussed at pages 10-13. This claim is **DISMISSED without prejudice**.

### b.  42 U.S.C. §§ 1985 and 1986

Plaintiff's 42 U.S.C. §§ 1985 and 1986 claims against Defendant Wheeler fail because Plaintiff has not alleged that the purpose of the conspiracy to seize his personal property was to deprive him of the equal protection of the laws. These claims are, accordingly, **DISMISSED without prejudice**.

### 3.    Defendant Eugene Owen

Plaintiff has included specific factual allegations about Defendant Eugene Owen's involvement in the search and seizure of his property and dogs. Plaintiff asserts that Defendant Owen "is purported to be the investigator responsible for securing the invalid warrant and personally executing the search, seizure and destruction of Plaintiff's personal property and damages to his real estate." (Doc.

1, p. 9). Plaintiff contends that Defendant Owen is liable in his individual capacity under 42 U.S.C. §§ 1983, 1985, and 1986 for violating his rights pursuant to the Fourth and Fourteenth Amendments to the Constitution.

### a. 42 U.S.C. § 1983

In order to state a claim under 42 U.S.C. § 1983 against an individual, a plaintiff must establish that: "(1) . . . the conduct complained of was committed by a person acting under color of state law; and (2) . . . this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535 (1981). Plaintiff has adequately alleged that Defendant Owen was acting under color of law as a Brooks County Sheriff's Deputy.

### 1) Fourth Amendment

According to the allegations in Plaintiff's Complaint, Defendant Owen executed the warrant which authorized the search and seizure of Plaintiff's property and took part in the seizure. Plaintiff has alleged that the warrant was invalid, and that the resulting search and seizure of his dogs was unconstitutional. These allegations are sufficient to create a reasonable inference that Defendant Owen deprived Plaintiff of his rights under the Constitution. Accordingly, Plaintiff's Fourth Amendment § 1983 claim against Defendant Owen may proceed for further factual development.

2)     Fourteenth Amendment

Plaintiff's § 1983 claim against Defendant Owen for violation of his Fourteenth Amendment rights fails for the reasons discussed, *supra*, pages 10–13.  This claim is **DISMISSED without prejudice**.

b.  42 U.S.C. §§ 1985 and 1986

Plaintiff cannot state a claim under 42 U.S.C. §§ 1985 or 1986 upon which relief may be granted against Defendant Owen.  As discussed, *supra*, pp. 11–13, Plaintiff has not alleged that the purpose of the conspiracy to seize his property was to deprive him of the equal protection of the laws.  Accordingly, these claims are **DISMISSED without prejudice**.

4.     Defendant Ed Melton

Defendant Ed Melton is a deputy employed by the Brooks County Sheriff's Office. Plaintiff alleges that Defendant Melton personally participated in the search, seizure, and destruction of Plaintiff's property. Plaintiff also alleges that Defendant Melton, during a separate incident, unlawfully arrested Plaintiff "to intimidate and harass Plaintiff for the personal benefit of Howell L. Watkins II." (Doc. 1, p. 11). Defendant Melton is sued in his individual capacity under 42 U.S.C. §§ 1983, 1985, and 1986 for violating his rights pursuant to the Fourth and Fourteenth Amendments to the Constitution.

a.  42 U.S.C. § 1983

In order to state a claim under 42 U.S.C. § 1983 against an individual, a plaintiff must establish that: "(1) . . . the conduct complained of was committed by

a person acting under color of state law; and (2) . . . this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535 (1981). Plaintiff has adequately alleged that Defendant Owen was acting under color of law as a Brooks County Sheriff's Deputy.

### 1) Fourth Amendment

According to the allegations in Plaintiff's Complaint, Defendant Melton participated in the search of Plaintiff's property and destroyed items of Plaintiff's real and personal property. Plaintiff also alleges that on a separate occasion, Defendant Melton "execute[d] an illegal arrest of Plaintiff for exercising his right to use his own personal private driveway." (Doc. 1, p. 10). These allegations are sufficient to create a reasonable inference that Defendant Melton deprived Plaintiff of his rights under the Constitution. Accordingly, Plaintiff's Fourth Amendment § 1983 claim against Defendant Melton may proceed for further factual development.

### 2) Fourteenth Amendment

Plaintiff's § 1983 claim against Defendant Melton for violation of his Fourteenth Amendment rights fails for the reasons discussed, *supra*, pages 11–13. This claim is **DISMISSED without prejudice**.

### b. 42 U.S.C. §§ 1985 and 1986

Plaintiff cannot state a claim under 42 U.S.C. §§ 1985 or 1986 upon which relief may be granted against Defendant Melton. As discussed, *supra*, pp. 11–13, Plaintiff has not alleged that the purpose of the conspiracy to seize his property

was to deprive him of the equal protection of the laws. Accordingly, these claims are **DISMISSED without prejudice**.

### 4. Lonnie Doe

Plaintiff has alleged that Defendant Lonnie Doe is a Brooks County Deputy who participated in the search and seizure of his property. Plaintiff alleges that Defendant Doe "proceeded to make false statements under oath [to] cause Magistrate David Crosby to issue a[] criminal trespass warrant to have Plaintiff falsely arrested and imprisoned for three days on a baseless charge." (Doc. 1, p. 11). Plaintiff alleges that Defendant Doe acted at the behest of Howell L. Watkins. Plaintiff claims that Defendant Doe is liable in his individual capacity under 42 U.S.C. §§ 1983, 1985, and 1986 for violating his rights pursuant to the Fourth and Fourteenth Amendments to the Constitution.

### a. 42 U.S.C. § 1983

In order to state a claim under 42 U.S.C. § 1983 against an individual, a plaintiff must establish that: "(1) . . . the conduct complained of was committed by a person acting under color of state law; and (2) . . . this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535 (1981). Plaintiff has adequately alleged that Defendant Doe was acting under color of law as a Brooks County Sheriff's Deputy.

### 1)    Fourth Amendment

According to the allegations in Plaintiff's Complaint, Defendant Doe participated in the search of Plaintiff's property and destroyed items of Plaintiff's real and personal property. Plaintiff also alleges that Defendant Doe "proceeded to make false statements under oath [to] cause Magistrate David Crosby to issue a[] criminal trespass warrant to have Plaintiff falsely arrested and imprisoned for three days on a baseless charge." (Doc. 1, p. 11). It is unclear, however, whether Defendant Doe's search and seizure of Plaintiff's property on February 28, 2017 is related to Plaintiff's allegations of Defendant Doe's false statements concerning Plaintiff's arrest for criminal trespass or if Plaintiff is describing two separate events. Nevertheless, Plaintiff's allegations pertaining to Defendant Doe's participation in the alleged search and seizure of his property is sufficient to create a reasonable inference that Defendant Doe deprived Plaintiff of his rights under the Constitution. Accordingly, Plaintiff's Fourth Amendment § 1983 claim against Defendant Doe may proceed for further factual development.

### 2)    Fourteenth Amendment

Plaintiff's § 1983 claim against Defendant Doe for violation of his Fourteenth Amendment rights fails for the reasons discussed, *supra*, pages 11–13. This claim is **DISMISSED without prejudice**.

### b.  42 U.S.C. §§ 1985 and 1986

Plaintiff cannot state a claim under 42 U.S.C. §§ 1985 or 1986 upon which relief may be granted against Defendant Doe. As discussed, *supra*, pp. 11–13,

Plaintiff has not alleged that the purpose of the conspiracy to seize his property was to deprive him of the equal protection of the laws. Accordingly, these claims are **DISMISSED without prejudice**.

### E. Claims Against Defendant John Ulm

Defendant John Ulm is a jail administrator at the Brooks County Jail. Plaintiff alleges that Defendant Ulm participated in the unlawful search and seizure of his property as part of the conspiracy with other Brooks County Sheriff's Office employees. Further, Plaintiff alleges that he suffered "unreasonably harsh and inhumane" conditions while he was held in a booking cell for more than a week. (Doc. 1, p. 12). Plaintiff alleges that Defendant Ulm has violated his rights under the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. §§ 1983, 1985, and 1986.

### 1. 42 U.S.C. § 1983

In order to state a claim under 42 U.S.C. § 1983 against an individual, a plaintiff must establish that: "(1) . . . the conduct complained of was committed by a person acting under color of state law; and (2) . . . this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535 (1981). Plaintiff has adequately alleged that Defendant Ulm was acting under color of law as a Brooks County Jail Administrator.

### a. Fourth Amendment

According to the allegations in Plaintiff's Complaint, Defendant Ulm participated in the search of Plaintiff's property and destroyed items of Plaintiff's real and personal property. Plaintiff has alleged that the warrant was invalid, and that the resulting search and seizure of his property was unconstitutional. These allegations are sufficient to create a reasonable inference that Defendant Ulm deprived Plaintiff of his rights under the Constitution. Accordingly, Plaintiff's Fourth Amendment § 1983 claim against Defendant Ulm may proceed for further factual development.

### b. Fourteenth Amendment

Plaintiff alleges that he was subjected to inhumane conditions while being held at the Brooks County Jail for more than a week. It is unclear from Plaintiff's complaint why he was held at the Brooks County Jail, but for purposes of review under § 1915 the Court will apply the analysis for a pre-trial detainee's conditions of confinement claim.

"The conditions under which pretrial detainees are held are reviewed under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment's Cruel and Unusual Punishment Clause applicable to convicted prisoners." White v. Cochran, 2017 WL 6492004, at *2 (11th Cir. 2017). The standard is the same under both amendments; prisoners and detainees must not be "deprive[d] ... of the minimal civilized measure of life's necessities." Groover v. Israel, 684 F. App'x 782, 785-86 (11th Cir. 2017) (quoting Rhodes v. Chapman,

452 U.S. 337, 347 (1981)). Inmates must be provided humane conditions of confinement, and "prison officials must ensure that inmates receive adequate food clothes, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 536-27 (1984)). To state a claim for relief under either Amendment based on the conditions of an inmate's confinement "requires a two-prong showing: an objective showing of a deprivation or injury that is 'sufficiently serious' to constitute a denial of the 'minimal civilized measure of life's necessities' and a subjective showing that the official had a 'sufficiently culpable state of mind.'" Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010) (quoting Farmer, 511 U.S. at 834).

Plaintiff alleges that while held at Brooks County Jail, "[h]e was forced to sleep on the floor, deprived of any opportunity to take a shower or have basic hygiene, only a cold water sink, … was given a thin jump suit but no underwear…[and] Plaintiff was subjected to extremely cold temperatures and subjected to bright light 24 hours a day for more tha[n] a week." (Doc. 1, p. 12). However, the Eleventh Circuit has found that far worse conditions than those alleged by Plaintiff do not rise to the level of a constitutional violation.

In Alfred v. Bryant, the Eleventh Circuit found that confinement for eighteen days without a mattress and a properly functioning toilet did not violate the Eighth Amendment. 378 F. App'x 977 (11th Cir. 2010). Indeed, as the U.S. Supreme Court has held, "the Constitution does not mandate comfortable prisons." Brennan,

511 U.S. at 832. Plaintiff's allegations are not "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (citation omitted) (emphasis in original). Plaintiff has failed to show that his confinement for one week without a mattress, lack of hot water and opportunity to shower, cold temperatures, and bright lights "pose[d] an unreasonable risk of serious damage to [his] health or safety." Id.; see also Steele v. Watts, 2016 WL 5662059 (S.D. Ala. Aug. 16, 2016) (finding that a lack of water and working toilet in cell was not a constitutional violation); Hamm v. DeKalb County, 774 F.2d 1567, 1569 (11th Cir. 1985) (finding that sleeping on an unsanitary eating table or dirty mattress on the floor does not violate an inmate's Eighth Amendment rights).

Even if Plaintiff established that these conditions were objectively unreasonable, he has not established that Defendant Ulm acted with deliberate indifference to these circumstances. Plaintiff bears the burden of showing that Defendant Ulm disregarded an excessive risk to Plaintiff's health. Farmer, 511 U.S. at 835 ("Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety.'"). Accordingly, Plaintiff's Fourteenth Amendment Conditions of Confinement claim must be and are **DISMISSED without prejudice.**

### 2. 42 U.S.C. §§ 1985 and 1986

Plaintiff cannot state a claim under 42 U.S.C. §§ 1985 or 1986 upon which relief may be granted against Defendant Ulm. As discussed, *supra*, pp. 11–13,

29

Plaintiff has not alleged that the purpose of the conspiracy to seize his property was to deprive him of the equal protection of the laws. Accordingly, these claims are **DISMISSED without prejudice**.

### H. Claims Against Defendant Willie Clemmons

Defendant Willie Clemmons is a Quitman City Police Officer. Plaintiff alleges that, during the raid and seizure of his property, Clemmons shot several of his dogs with tranquilizing darts. (Doc. 1, p. 13). Plaintiff claims that Defendant Clemmons is liable under 42 U.S.C. §§ 1983, 1985, and 1986 in his individual capacity for violating Plaintiff's Fourth and Fourteenth Amendment rights.

Unlike Defendants Dewey, Wheeler, and Owen, Defendant Clemmons is not entitled to Eleventh Amendment immunity for claims against him in his official capacity. Manders, 338 F.3d at 1336 (noting that it is "settled law that city police, county police, and security guards hired by private entities are not entitled to Eleventh Amendment immunity"). Thus, Defendant Clemmons may be liable to Plaintiff in both his official and individual capacities, however, Plaintiff has sued Defendant Clemmons in his individual capacity only.

#### 1. 42 U.S.C. § 1983

Defendant Clemmons is liable to Plaintiff under § 1983 if he: (1) acted under color of state law, and (2) deprived Plaintiff of rights, privileges, or immunities secured by the Constitution. Parratt, 451 U.S. at 535. Plaintiff has adequately alleged that Defendant Clemmons, as a Quitman City Police Officer, was acting under color of law. Plaintiff has also alleged that he was deprived of rights under

the Fourth Amendment. Plaintiff has failed to allege a violation of his Fourteenth Amendment rights.

### a. Fourth Amendment

Plaintiff claims that Defendant Clemmons "was the designated shooter" of Plaintiff's dogs. An individual's interest in his or her pet dog falls within the Fourth Amendment's protection against unreasonable seizures. See Altman v. City of High Point, 330 F.3d 194, 202 (4th Cir. 2003) (privately owned pet dogs qualify as property in that pets are "effects" under the seizure clause of the Fourth Amendment). As a result, the killing of a person's pet dog by the government without the person's consent is a seizure within the meaning of the Fourth Amendment. See Maldonado v. Fontanes, 568 F.3d 263, 270 (1st Cir. 2009). If the seizure of Plaintiff's dogs was unreasonable, as Plaintiff suggests, Defendant Clemmons may be liable for violating Plaintiff's Fourth Amendment rights. Plaintiff's Fourth Amendment § 1983 claim against Defendant Clemmons may proceed for further factual development.

### b. Fourteenth Amendment

Plaintiff has not stated a claim for relief under § 1983 for violation of his Fourteenth Amendment rights against Defendant Clemmons for the reasons discussed, *supra*, pages 10–13. This claim is **DISMISSED without prejudice**.

### 2. 42 U.S.C. §§ 1985 and 1986

Plaintiff's 42 U.S.C. §§ 1985 and 1986 claims against Defendant Clemmons fail because Plaintiff has not alleged that the purpose of the conspiracy to seize

his dogs was to deprive him of the equal protection of the laws. These claims are, accordingly, **DISMISSED without prejudice**.

### G. Claims Against Defendants Becky Malpus, Chandler Giddes, Thomasville, Thomas County Humane Society, Inc., and Moultrie, Colquitt County Humane Society, Inc.

Defendant Becky Malpus is the "registered agent for Thomasville Thomas County Humane Society" and Defendant Chandler Giddes is the "animal control director of Thomas County." (Doc. 1, pp. 13-14). Plaintiff argues that Defendant Malpus is liable under 42 U.S.C. §§ 1983, 1985, and 1986 in both her individual and official capacity, and that Defendant Giddes is liable in his individual capacity, as agents of Brooks County for their role in the impoundment of Plaintiff's dogs.

#### 1. 42 U.S.C. § 1983

In order to state a claim under § 1983 against Defendants Malpus and Giddes, Plaintiff must establish that these Defendants were acting under color of state law when they deprived Plaintiff of his rights, privileges, or immunities secured by the Constitution. See Parratt, 451 U.S. at 535.

Plaintiff argues that these Defendants were acting under color of law at the time they participated in the seizure of Plaintiff's dogs. Specifically, Plaintiff alleges that Defendant Malpus "was responsible for planning, ordering, orchestrating, and executing the seizure and impoundment of Plaintiff's healthy dogs. . .," and that Defendant Giddes acted in concert with Malpus. (Doc. 1, pp. 13-14). Although it is not clear to the Court whether employees for the City of Thomasville and Thomas County Animal Control and Humane Society are acting under color of Georgia law,

Plaintiff's claims must be dismissed regardless as Plaintiff does not state a claim upon which relief may be granted.

As stated above, the Supreme Court has held that when a person is deprived of his property due to the actions of state employees, claims of property deprivation are barred by the Parratt-Hudson doctrine if a post-deprivation remedy exists. See Hudson, 468 U.S. at 534; Parratt, 451 U.S. at 541. The Eleventh Circuit has held that intentional deprivations of property by state officials do not violate the due process clause of the Fourteenth Amendment if adequate post-deprivation remedies exist. See Jackson v. Hill, 569 F. App'x 697, 2014 WL 2696765 (11th Cir. 2014). Plaintiff's case is one of intentional deprivation, and an adequate post-deprivation remedy is available to Plaintiff in this case.[1] See Hudson, 468 U.S. at 533–34; Marshall v. Norwood, 741 F.2d 761, 763 (5th Cir.1984). Specifically, Georgia law provides at least two potential post-deprivation remedies for these types of claims. See O.C.G.A. §§ 51–10–1 through 51–10–6 (providing cause of action and damages for injuries to property); and O.C.G.A. §§ 28–5–80 through 28–5–86 (providing for a claim against the state or any of its agencies). Thus, Plaintiff's claims against Defendant Malpus in her official and individual capacities, Defendant Giddes in his individual capacity, and all claims against Thomasville,

---

[1] Pursuant to O.C.G.A. § 44-1-8, animals are considered personal property and damages are recoverable for the intentional or even negligent deprivation thereof under O.C.G.A. § 51-10-6.

Thomas County Humane Society must be and are **DISMISSED without prejudice**.

        2.     42 U.S.C. §§ 1985 and 1986

Plaintiff's 42 U.S.C. §§ 1985 and 1986 claims against Defendants Malpus, Giddes, and the Thomasville, Thomas County Humane Society fail because Plaintiff has not alleged that Defendants conspired to seize his dogs for the purpose of depriving him of the equal protection of the law. These claims are, accordingly, **DISMISSED without prejudice.**

### H.    Claims Against Defendants Charles Devane, Jennifer Glover, and Moultrie, Colquitt County Humane Society, Inc.

 Defendant Charles Devane is "the operator of B.A.R.C. Humane Society," and Defendant Jennifer Glover is the "registered agent of Moultrie Colquitt County Humane Society." (Doc. 1, pp. 14-15). Plaintiff alleges that Defendants "planned and conspired with Brooks County Animal Control director Mike Dewey" to seize and impound Plaintiff's dogs. Plaintiff argues that Defendants Devane, Glover, and Moultrie, Colquitt County Humane Society, Inc. are liable under 42 U.S.C. §§ 1983, 1985, and 1986 in their individual capacities as agents of Brooks County for their role in the impoundment of Plaintiff's dogs.

Plaintiff argues that these Defendants were acting under color of law at the time they participated in the seizure of Plaintiff's dogs. Although it is not clear to the Court whether an employee of either B.A.R.C. Humane Society or the Moultrie Colquitt County Humane Society are acting under color of Georgia law, Plaintiff's

claims must be **DISMISSED without prejudice** as Plaintiff does not state a claim upon which relief may be granted.

As stated above in the discussion pertaining to claims against Defendants Malpus, Giddes, and Thomasville, Thomas County Humane Society, Plaintiff's § 1983 claims against Defendants Devane, Glover, and Moultrie Colquitt County Humane Society must be dismissed as an adequate post-deprivation remedy exists. Further, Plaintiff's 42 U.S.C. §§ 1985 and 1986 claims against Defendants Devane, Glover, and Moultrie, Colquitt County Humane Society fail because Plaintiff has not alleged that Defendants conspired to seize his dogs for the purpose of depriving him of the equal protection of the law. These claims are, accordingly, **DISMISSED without prejudice**.

## I.     Claims Against Defendant Larry Nichols

Plaintiff has sued Larry Nichols for allegedly conspiring with co-Defendant Billy Ingram to condemn Plaintiff's property and to disconnect Plaintiff's electricity. (Doc. 1, p. 5). Plaintiff alleges that Nichols, in his role as the general manager of Colquitt EMC, "complied with [] the unlawful request . . . to disconnect Plaintiff's electricity to facilitate an illegal eviction for the benefit of Howell L. Watkins II." (Doc. 1, p. 16). Plaintiff sues Defendant Nichols in both his individual and official capacities under 42 U.S.C. §§ 1983, 1985, and 1986 for violating his rights pursuant to the Fourth and Fourteenth Amendment. However, all claims against Defendant Nichols must be dismissed.

## 1.  Official Capacity

As an initial matter, an electrical membership corporation (EMC) is not a governmental entity. See Walton Elec. Membership Corp. v. Snyder, 270 Ga. 62 (1998). Thus, in order to state a § 1983 claim against Defendant Nichols in his official capacity as general manager of Colquitt EMC, there must be state action. Because Colquitt EMC is not a governmental entity, there is no state action, and Plaintiff's § 1983 claims against Defendant Nichols in his official capacity must be DISMISSED without prejudice. See American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999) ("To state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or law of the United States, and that the alleged deprivation was committed under color of state law.").

## 2.  Individual Capacity

Defendant Nichols is liable to Plaintiff under § 1983 if he: (1) acted under color of state law, and (2) deprived Plaintiff of rights, privileges, or immunities secured by the Constitution.  Parratt, 451 U.S. at 535. Plaintiff's allegations that Defendant Nichols acted to disconnect his electricity at the unlawful request of Billy Ingram does not provide a basis for finding that Defendant Nichols was acting under color of state law. To the extent that Plaintiff intends to sue Defendant Nichols in his individual capacity for constitutional violations under § 1983, he has failed to meet the first prong of the Parratt test in showing that Defendant Nichols acted under color of state law.

Even if Plaintiff was able to show that Defendant Nichols was acting under color of state law, Plaintiff's claim would still fail as adequate postdeprivation remedies exist under state law for the same reasons discussed, *supra*, pp. 13-14. See <u>Alexander v. May</u>, 476 F. App'x 225 (11th Cir. 2012) (finding that Plaintiff's § 1983 claim for wrongful termination of utilities caused by the unauthorized and vindictive actions of defendants failed as Plaintiff had an adequate remedy at state law.). Therefore, Plaintiff's § 1983 claim against Defendant Nichols in his individual capacity is **DISMISSED without prejudice**.

Plaintiff's 42 U.S.C. §§ 1985 and 1986 claims against Defendant Larry Nichols fail because Plaintiff has not alleged that Defendant Nichols conspired for the purpose of depriving him of the equal protection of the law. These claims are, accordingly, **DISMISSED without prejudice.**

### J. Claims Against Defendants Robert Bruce, Mark Nichols, Clint Nichols, and Tyler Nichols

Plaintiff claims that Defendants Robert Bruce, Mark Nichols, Clint Nichols, and Tyler Nichols participated in converting Plaintiff's personal property which Defendants then "sold for their personal enrichment." (Doc. 1, pp. 17-19). In addition to conversion claims pertaining to personal property, Plaintiff alleges that while he was falsely imprisoned Defendant Tyler Nichols was given Plaintiff's "social security debit card with explicit instructions that it was to be promptly delivered to a friend of the Plaintiff who would use the card to secure a bond for plaintiff's release." (Doc. 1, p. 19). Instead, Plaintiff alleges that Defendant Tyler

Nichols "went on a two-month shopping spree" using Plaintiff's social security debit card and "has refused to make any reimbursement." (Id.). Plaintiff maintains that Defendants are liable under 42 U.S.C. §§ 1983, 1985, and 1986 for violations of his Fourth and Fourteenth Amendment rights. Although not explicitly stated, the Court construes the factual allegations in Plaintiff's complaint as also stating a claim of conversion against the above-named Defendants.

### 1. 42 U.S.C. § 1983

In order for a person to be liable under 42 U.S.C. § 1983, he or she must be "acting under color of state law." 42 U.S.C. § 1983. An otherwise private person acts under color of state law when he is "a willful participant in joint action" with a state actor. Harvey v. Harvey, 949 F.2d 1127, 1133 (11th Cir. 1992) (quotation omitted). In this respect, the plaintiff must "plead in detail, through reference to material facts, the relationship or nature of the conspiracy" between the private person and the state actor. Id. "It is insufficient to 'merely string together' discrete events, without showing support for a reasoned inference that the private and state actors agreed to violate the plaintiff's rights." Cox v. Mills, 465 F. App'x 885, 887 (11th Cir. 2012) (citing Harvey, 949 F.2d at 1133). The plaintiff "must show that the parties 'reached an understanding' to deny the plaintiff his or her rights." Grider v. City of Auburn, 618 F.3d 1240, 1260 (11th Cir. 2010) (quoting Bendiburg v. Dempsey, 909 F.2d 463, 468 (11th Cir. 1990)).

In support of his claims against Defendants, Plaintiff alleges that Defendants were acting as agents of co-Defendants Howell L. Watkins and Mike Dewey as

they confiscated and destroyed Plaintiff's property. However, merely alleging that private individuals were acting as agents for a state official does not support "a reasoned inference" that Defendants had agreed with Sheriff Dewey to deprive Plaintiff of his rights. Thus, Defendants, who are private individuals, cannot be said to have acted under color of state law. Accordingly, Plaintiff's 42 U.S.C. § 1983 claim against Defendants Robert Bruce, Mark Nichols, Clint Nichols, and Tyler Nichols is **DIMISSED without prejudice**.

2. 42 U.S.C. §§ 1985 and 1986

Because Plaintiff has failed to adequately allege that Defendants were a part of a conspiracy to deprive Plaintiff of his rights under the Constitution, his claims under 42 U.S.C. §§ 1985-86 also fail. Plaintiff's 42 U.S.C. §§ 1985 and 1986 claims against Defendants Robert Bruce, Mark Nichols, Clint Nichols, and Tyler Nichols are **DISMISSED without prejudice**.

3. State Law Conversion Claim

Georgia codifies the common-law action of conversion at O.C.G.A. § 51-10-1. In order to establish a claim for conversion under Georgia law, a plaintiff must prove the following: (1) proof of ownership or title to the disputed property, or the right to immediate possession of the property; (2) actual possession of the property by the defendant; (3) demand by the plaintiff for the return of the property; (4) the defendant's refusal to return the property; and (5) the value of the property. Buice v. Campbell, 108 S.E.2d 339, 341 (1959) (citations omitted); City of College Park v. Sheraton Savannah Corp., 509 S.E.2d 371, 374 (1998).

Here, Plaintiff has alleged that Defendants Bruce, Mark Nichols, Clint Nichols, and Tyler Nichols "plunder[ed] and pillaged Plaintiff's personal property" during the execution of the illegal search and seizure of his property. (Doc. 1, p. 17). Plaintiff alleges that Defendants converted his property for their own personal use or sold it for personal gain. Plaintiff further alleges that Defendant Tyler Nichols used Plaintiff's social security debit card to make personal purchases and did not return the card for two months. Although it is unclear to the Court which items of Plaintiff's personal property were converted by Defendants[2] and the extent of Defendant's possession, Plaintiff has alleged sufficient facts to state a plausible claim at this stage of litigation. Plaintiff's conversion claim against Defendant Bruce, Mark Nichols, Clint Nichols, and Tyler Nichols may proceed for further factual development.

### K. Claims Against David Crosby

Plaintiff alleges that Defendant David Crosby, in his role as Brooks County Magistrate Judge, conspired with co-Defendants Mike Dewey and Howell L. Watkins to "falsely charge" and deny bail to Plaintiff. Plaintiff also alleges that, more than two months later, Defendant Crosby "issued a criminal trespass arrest warrant for Plaintiff's arrest for using his own driveway." (Doc. 1, p. 20). Plaintiff alleges that Defendant Crosby is liable for violating his rights under the Fourth and Fourteenth Amendment pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, based on

---

[2] Plaintiff states in his Complaint that "[a] list of the stolen property is included as exhibit B," though no exhibits accompanied Plaintiff's Complaint. (Doc. 1, p. 17).

his alleged role in the conspiracy to deprive Plaintiff of his "clearly established rights." (Id.).

However, judges are entitled to absolute immunity from damages for acts taken in their judicial capacity, unless they acted in the "clear absence of all jurisdiction." Stump v. Sparkman, 435 U.S.C 349, 356-57 (1978); Simmons v. Conger, 86 F.3d 1080, 1084-85 (11th Cir. 1996). This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction. See Stump, 435 U.S. at 356. Magistrate judges in Georgia have the authority to set bail bonds. Georgia Uniform Magistrate Court Rules 23; O.C.G.A. § 17-6-1(f)(1)-(2). Because Defendant Crosby was acting within his judicial capacity, he has absolute immunity from liability to Plaintiff for damages. Therefore, all claims against Defendant Crosby are **DISMISSED with prejudice**.

### L. Claims Against City of Quitman

Plaintiff sues the City of Quitman, its Mayor, and City Council members as Plaintiff alleges "the City of Quitman is ultimately responsible for the actions of its po[l]ice officers and employees." (Doc. 1, p. 22). Plaintiff states that the actions of Quitman Police officers who were present at the search and seizure of his property are attributable to the City, its Mayor, and City Council members.

Whether an entity has the capacity to be sued in a Section 1983 action "is determined by the law of the state in which the district court sits." Falkner v. Monroe Cty. Sheriff's Dept., 523 F. App'x 696, 700 (11th Cir. 2013) (per curiam) (citing Dean v. Barber, 951 F.2d 1210, 1214-15 (11th Cir. 1992)); Robinson v. Hogansville

Police Dept., 159 F. App'x 137, 138 (11th Cir. 2005) (per curiam) ("Under Federal Rule of Civil Procedure 17(b), the capacity to sue or be sued [is] be determined by the law of the state in which the district court is held."). Because the events underlying this action occurred in Georgia, Georgia law determines the capacity to be sued. Georgia "recognizes only three classes as legal entities, namely: (1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue." Lovelace v. Dekalb Cent. Prob., 144 F. App'x 793, 795 (11th Cir. 2005) (per curiam) (quoting Georgia Insurers Insolvency Pool v. Elbert County, 258 Ga. 317 (1988)).

The City of Quitman is not an entity capable of being sued under 42 U.S.C. § 1983 as Plaintiff has failed to allege that the City of Quitman had a custom or policy that was the "moving force" or cause of the deprivation of his rights. See Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997). Furthermore, to the extent that Plaintiff intends to sue the City's mayor and council members in their individual capacities, Plaintiff's claims must be dismissed as he has failed to allege that any of these defendants took any action to violate or conspired with anyone to violate Plaintiff's constitutional rights. Thus, any claims against the City of Quitman, its Mayor, and City Council members must be and are **DISMISSED without prejudice**.

### M. Claims Against Jerri Dukes

Plaintiff alleges that Defendant Jerri Dukes "arbitrarily and capriciously" selected his property for an in rem tax foreclosure sale while acting as Brooks

County Tax Commissioner. (Doc. 1, p. 22). Plaintiff states that the property had been previously tax exempt as a historic landmark but was then reassessed as taxable property. Plaintiff claims that after his property was reassessed, he was deprived of his constitutional rights as he was deprived of any notice or opportunity to appeal the reassessment. Plaintiff maintains that Defendant Dukes is liable under 42 U.S.C. §§ 1983, 1985, and 1986 for violations of his Fourth and Fourteenth Amendment rights.

However, the Tax Injunction Act ("TIA") may preclude this Court's ability to hear Plaintiff's claims against Defendant Dukes. The TIA bars jurisdiction when "(1) the relief requested by the plaintiff would enjoin, suspend, or restrain a state tax assessment, and (2) the state affords the plaintiff a plain, speedy, and efficient remedy." Kelly v. Ala. Dep't of Revenue, 638 F. App'x 884, 889 (11th Cir. 2016) (per curiam); 28 U.S.C. § 1341. The TIA "limits jurisdiction which might otherwise exist" and is "intended to prevent taxpayers from using federal courts to raise questions of state or federal law relating to the validity of particular taxes." Id. at 888-89 (quoting Osceola v. Fla. Dep't of Revenue, 893 F.2d 1231, 1232-33 (11th Cir. 1990)).

Here, it is not clear to the Court whether Plaintiff seeks monetary, injunctive, declaratory, or a combination of relief, for his claims against Defendant Dukes. To the extent that Plaintiff requests the Court "declare the [i]n [r]em tax foreclosure sale to be invalid," this Court does not have jurisdiction to hear such a claim in light of the TIA. (Doc. 1, p. 37); See Osceola, 893 F.2d at 1233 (recognizing that

plaintiff's requests for injunctive and declaratory relief are plainly barred). The Court also notes that the TIA "bars claims for damages because a monetary award against the state or its tax administrators would have the same detrimental effect on the state as equitable relief, and would dampen state tax collectors." Kelly, 638 F. App'x at 889. Thus, Plaintiff's claims against Defendant Dukes must be dismissed as the relief Plaintiff requests would enjoin, suspend, or restrain a state tax assessment. Further, Plaintiff is afforded a remedy under state law to challenge the reassessment of his property. See O.C.G.A. § 48-5-311.

As this Court does not have jurisdiction over Plaintiff's claims relating to the reassessment of his property taxes, all claims against Defendant Dukes must be **DISMISSED without prejudice**.

### N. Claims Against Defendant Becky Rothrock

Plaintiff alleges that Defendant Rothrock made a false statement to co-Defendant Crosby that formed the basis of Plaintiff's false arrest for criminal trespass. Plaintiff alleges that Defendant Rothrock is the current Brooks County Tax Commissioner and "successor in interest to Jerri Dukes." (Doc. 1, p. 23). Plaintiff sues Defendant Rothrock in her individual capacity under 42 U.S.C. §§ 1983, 1985, and 1986 for violating his rights pursuant to the Fourth and Fourteenth Amendment. However, all claims against Defendant Rothrock must be dismissed.

Defendant Rothrock is liable to Plaintiff under § 1983 if she: (1) acted under color of state law, and (2) deprived Plaintiff of rights, privileges, or immunities secured by the Constitution. Parratt, 451 U.S. at 535. Plaintiff has failed to allege

that Defendant Rothrock was acting under color of state law or that her actions deprived Plaintiff of his rights secured by the Constitution. Simply because Defendant Rothrock is the current Brooks County Tax Commissioner does not necessitate liability for the actions of her predecessor, co-Defendant Dukes, or for her actions prior to assuming the role of county tax commissioner. Further, for the reasons stated above, Plaintiff has failed to allege that Defendant Rothrock acted to conspire with state actors to deprive Plaintiff of his constitutional rights. Thus, all of Plaintiff's claims against Defendant Rothrock must be and are **DISMISSED without prejudice**.

### O. Claims Against Defendant Ginger S. Forgione

Plaintiff alleges that Defendant Forgione, in her role as Clerk of Brooks County Superior Court, refused to file documents Plaintiff submitted to the court for filing or to schedule requested hearings. Plaintiff states the documents "were returned stamped as filed but they were not filed in the record and no hearing was ever scheduled." (Doc. 1, p. 24). Plaintiff claims that as a result of Defendant Forgione's actions, he remained in jail for an additional 30 days. Plaintiff alleges that Defendant Forgione's actions were motivated by the conspiracy of co-Defendants Howell L. Watkins and Mike Dewey "to ensure there would be no legal challenge to inconvenience the ongoing illegal eviction" of Plaintiff from his property. Id. Plaintiff sues Defendant Forgione in her individual capacity.

"Court clerks enjoy 'a narrower ambit of immunity than judges'" Hyland v. Kolhage, 267 F. App'x 836, 842 (11th Cir. 2008) (quoting Tarter v. Hury, 646 F.2d

1010, 1013 (5th Cir. 1981)). However, "[n]onjudicial officials have absolute immunity for their duties that are integrally related to the judicial process." <u>Jenkins v. Clerk of Court, U.S. Dist. Court, So. Dist. Of Fla</u>., 150 F. App'x 988, 990 (11th Cir. 2005). Further, court clerks are entitled to qualified immunity from all other actions for damages. <u>Burlison v. Angus</u>, 737 F. App'x 523, 524 (11th Cir. 2018). Plaintiff's claim against Defendant Forgione are based on her alleged failure to properly docket his habeas and mandamus petitions and motion for a temporary restraining order. Each of these actions constitutes an integral part of the judicial process, and Forgione's actions are protected by judicial immunity. <u>See e.g.</u> <u>Essell v. Carter</u>, 450 F. App'x 691, 691 (9th Cir. 2011) (clerk of court immune to suit alleging failure to respond to letter and file motions); <u>In re Castillo</u>, 297 F.3d 940, 951 (9th Cir. 2002) (clerk of court immune to suit alleging failure to give notice of hearing). Even if Forgione's actions were not protected by judicial immunity, Forgione is entitled to qualified immunity as Plaintiff seeks monetary damages. <u>But see</u> <u>Tarter</u>, 646 F.2d at 1013 (holding that court clerks are not entitled to absolute immunity from claims for equitable relief). Thus, all claims against Defendant Forgione must be and are **DISMISSED without prejudice**.

### P. Claims Against Defendant Howell L. Watkins and Howell L. Watkins Realty Corporation

Plaintiff has alleged that Defendant Howell L. Watkins orchestrated and executed an elaborate conspiracy designed to deprive Plaintiff of his property.

According to Plaintiff's Complaint, almost all actions taken by other co-defendants were "at the behest" of Defendant Watkins.

As previously stated, Plaintiff must show that Defendant Watkins acted under color of state law when he deprived Plaintiff of his rights, privileges, or immunities secured by the Constitution. See Parratt, 451 U.S. at 535. Defendant Watkins is a private party, and "[o]nly in rare circumstances can a private party be viewed as a state actor for section 1983 purposes." Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001) (quoting Harvey, 949 F.2d at 1130) (internal quotations omitted). The Eleventh Circuit has set forth three separate tests for determining when a private party is considered a state actor: (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("the state compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) "the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise[ ]" ("nexus/joint action test"). Id. at 1347 (citing NBC, Inc. v. Communications Workers of America, 860 F.2d 1022, 1026–27 (11th Cir.1988)); see also Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1277 (11th Cir. 2003). Because Plaintiff alleged a conspiracy between Defendant Howell and co-Defendants Ingram, Crosby, Dewey, and Dukes, the nexus/joint action test is most applicable. Plaintiff must show that the defendants reached an agreement to violate his rights by making particularized allegations that a

conspiracy exists. <u>GJR Investments v. Cty of Escambia</u>, 132 F.3d 1359 (11th Cir. 1998). "The linchpin for conspiracy is agreement, which presupposes communication." <u>Bailey v. Bd. of Cty. Comm'rs of Alachua Cty.</u>, 956 F.2d 1112, 1122 (11th Cir. 1992).

Plaintiff alleges that Defendant Watkins conspired with co-Defendant Dukes to have his property subjected to an in rem tax foreclosure sale, conspired with co-Defendants Dewey and Ingram to have Plaintiff evicted from his property, and conspired with co-Defendant Crosby to falsely charge and deny Plaintiff bail. Plaintiff also alleges that co-Defendant Glover acted at the behest of Defendant Watkins to illegally impound Plaintiff's dogs, and that all co-defendants involved in the illegal search and seizure of Plaintiff's property acted at the behest of Defendant Watkins. Specifically, Plaintiff alleges the warrant for his arrest was issued upon personal request of Defendant Watkins, and that Defendants Mark, Clint, and Tyler Nichols, along with Defendant Bruce, acted with the permission and encouragement of Defendant Watkins to confiscate and demolish Plaintiff's personal property during the February 28, 2017 search.

Although Plaintiff alleges a conspiracy, he does not allege that Defendant Watkins agreed with any of the state actor co-defendants to deprive Plaintiff of his constitutional rights. Instead, Plaintiff admits that the conspiracy "was for a sole purpose- enrichment of Howell L. Watkins II and his Howell L. Watkins Realty Corporation." (Doc. 1, p. 4). Thus, Plaintiff has failed to plead sufficient facts to state a § 1983 claim of conspiracy against Defendant Watkins.

Because Plaintiff has failed to adequately allege that Defendant Watkins was part of a conspiracy to deprive Plaintiff of his rights under the Constitution, his claims under 42 U.S.C. §§ 1985 and 1986 also fail. Plaintiff's 42 U.S.C. §§ 1983, 1985, and 1986 claims against Defendant Watkins are **DISMISSED without prejudice**.

Plaintiffs claims against Defendant Howell L. Watkins II Realty Corporation must be dismissed in their entirety as a private corporation "may be liable under § 1983 if it is established that the constitutional violation was the result of the corporation's policy or custom." <u>Harvey</u>, 949, F.2d 1127, 1129-30 (11th Cir. 1992). Plaintiff's complaint alleges no facts to suggest that Howell L. Watkins II Realty Corporation had a policy or custom to deprive him of his constitutional rights. Thus, all claims against Defendant Howell L. Watkins II Realty Corporation are **DISMISSED without prejudice**.

## Q. Claims Against John or Jane Does 1-25

Plaintiff states in his Complaint that "John or Jane does 1-25 are employees of Brooks County Sheriff's Office, City of Quitman, Thomasville Thomas County Humane Society, Moultrie Colquitt County Humane Society, B.A.R.C. Humane Society, and Robert Bruce." (Doc. 1, pp. 25-26). Plaintiff alleges that the unnamed defendants were participants in the search and seizure of his property, as well as the impoundment of Plaintiff's dogs.

Fictitious party pleading is not generally permitted in federal court. A plaintiff may sue an unknown defendant only when he sufficiently identifies the defendant

to allow service of process. <u>Moulds v. Bullard</u>, 345 F. App'x 387, 390 (11th Cir. 2009); <u>Dean v. Barber</u>, 951 F.2d 1210, 1215–16 (11th Cir. 1992). Plaintiff has not sufficiently identified "John or Jane Does 1-25." In the event Plaintiff learns additional identifying information, he may file a motion for leave to add these individuals as named defendants. Accordingly, Plaintiff's claims against John or Jane Does 1-25 are **DISMISSED without prejudice**.

## IV. Plaintiff's Motion for Temporary Restraining Order (Doc. 3)

Plaintiff has filed a motion seeking a "temporary restraining order and/or preliminary injunction restraining and enjoining all Defendants . . . from interfering with or failing to maintain the supply of electricity to Plaintiff's personal residence. . ." (Doc. 3, p. 1). Plaintiff states that Brooks County Building Inspector Billy Ingram condemned Plaintiff's home and requested the electricity be disconnected due to a fire hazard.

A temporary restraining order or preliminary injunction is a drastic remedy used primarily to preserve the status quo rather than grant most or all of the substantive relief sought in the complaint. <u>See, e.g.</u>, <u>Cate v. Oldham</u>, 707 F.2d 1176, 1185 (11th Cir. 1983); <u>Fernandez-Roque v. Smith</u>, 671, F.2d 426, 429 (11th Cir. 1982). Factors a movant must show to be entitled to a TRO include: "(1) a substantial likelihood of ultimate success on the merits; (2) the TRO is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the TRO would inflict on the non-movant; and (4) the TRO would serve the public interest." <u>Ingram v. Ault</u>, 50 F.3d 898, 900 (11th Cir. 1995) (per curiam).

Although Plaintiff argues that immediate reconnection of his electricity "will forestall the immediate, irreparable, and irreversible harm" posed to his health and wellbeing, Plaintiff's motion does not demonstrate a substantial likelihood of ultimate success on the merits, or show that there is a legal basis for his relief. (Doc. 3, p. 4). Thus, Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction must be **DISMISSED**.

## V.    CONCLUSION

For the reasons discussed herein, Plaintiff's Motion to Proceed IFP (Doc. 2) is **GRANTED**, and his Motion for Temporary Restraining Order is **DISMISSED**. Pursuant to the Court's preliminary review of Plaintiff's Complaint, the following claims should proceed further for factual development: (1) Plaintiff's 42 U.S.C. § 1983 claim for violation of his Fourth Amendment rights against Defendants Mike Dewey, Joe Wheeler, Eugene Owen, Ed Melton, Lonnie Doe, John Ulm, and Willie Clemmons; and (2) Plaintiff's state law conversion claims against Defendants Robert Bruce, Mark Nichols, Clint Nichols, and Tyler Nichols. All of Plaintiff's remaining claims are **DISMISSED without prejudice**.

Given the facts alleged, any amendments to the Complaint related to these purported causes of action would be futile and non-curative. Therefore, none will be permitted.

It is thus **ORDERED** that service be made on Defendants Mike Dewey, Joe Wheeler, Eugene Owen, Ed Melton, Lonnie Doe, John Ulm, Willie Clemmons, Robert Bruce, Mark Nichols, Clint Nichols, and Tyler Nichols. Each Defendant is

**ORDERED** to file an Answer, or such other response as may be appropriate under Rule 12 and 28 U.S.C. § 1915. Defendants are reminded of their duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

      **SO ORDERED**, this 13th day of November, 2018.

*/s/ Hugh Lawson*       
**HUGH LAWSON, SENIOR JUDGE**

ehm