# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### VALDOSTA DIVISION

| | |
|---|---|
| **RICHARD JERRY MCLEOD,** | |
| Plaintiff, | |
| v. | Civil Action No. 7:18-CV-66 (HL) |
| **MIKE DEWEY, et al.**, | |
| Defendants. | |

## ORDER

Before the Court is a Motion for Summary Judgment filed by Defendants Mike Dewey, Joe Wheeler, Eugene Owen, Ed Melton, Lonnie Doe, John Ulm, and Willie Clemons. (Doc. 59). After reviewing the pleadings, briefs, affidavits, and other evidentiary materials presented, the Court concludes that Defendants are entitled to judgment as a matter of law and **GRANTS** Defendants' motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Richard Jerry McLeod is a resident of Brooks County, Georgia. (Doc. 59-2, ¶ 1; Doc. 64, ¶ 1). McLeod is well known to local officials. On March 9, 2016, the Brooks County Building Inspector notified McLeod that the structure located at 1675 Liberty Church Road in Boston, Georgia, in which McLeod lived, had been condemned and deemed "unsafe, unsanitary, and deficient because of

inadequate maintenance." (Doc. 59-5, p. 1).[1] Several months later, on November 3, 2016, the Brooks County District Attorney filed an accusation in Brooks County State Court charging McLeod with 72 counts of cruelty to animals pursuant to O.C.G.A. § 16-12-4(b). (Doc. 59-4). The accusation alleges that between March 9, 2015 and March 9, 2016, McLeod "did commit the offense of cruelty to animals by causing suffering" to 72 different dogs located on his property "by failing to provide adequate medical assistance, food and water, and sanitary conditions." (Id. at p.2). According to McLeod, those charges remain pending. (Doc. 66, ¶ 5).

On or about January 17, 2017, a little over two months after the filing of the accusation, the Brooks County Sheriff's Office received a citizen's complaint[2] concerning "an excessive number of dogs" located in the vicinity of 1675 Liberty Church Road and 25 Beasley Road, Dixie, Georgia. (Doc. 59-3, ¶ 7).[3] Knowing

---

[1] Plaintiff denies that his home was ever condemned "by anyone with authority to do so." (Doc. 66, ¶ 3). Whether or not the property was condemned is immaterial to the analysis of Plaintiff's Fourth Amendment claims. The Court includes this information solely for the purpose of demonstrating that McLeod and his property were known to county officials prior to the events leading to this lawsuit.

[2] Plaintiff speculates that the complaining party was his neighbor Howell L. Watkins, II, with whom he is engaged in civil litigation about the acquisition of Plaintiff's property. (Doc. 66, ¶ 6).

[3] Plaintiff objects to the Court's consideration of this statement of fact and any others contained in the Affidavit of Eugene Owen (Doc. 59-3), which Plaintiff contends are hearsay. (Doc. 61, ¶ 10; Doc. 65). Under Federal Rule of Civil Procedure 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in

that McLeod, the occupant of the premises identified in the complaint, had recently been arrested and charged with cruelty to animals, Defendant Brooks County Sheriff Mike Dewey instructed investigators to follow up on the report. (Doc. 59-3, ¶ 8). The responding investigators reported that without entering the property they observed at least 15 dogs without proper food, water, or visible vaccination tags. (Id. at ¶ 9). Defendant Eugene Owen, the lead investigator assigned to the case, went to McLeod's residence on January 18, 2017. (Id. at ¶¶ 8, 10). Owen reported that he observed at least 12 dogs. (Id. at ¶ 10).

Owen's investigation produced additional information concerning the animals on McLeod's property. Sergeant John Horton of the Brooks County Sheriff's Office informed Owen that when serving McLeod with a civil document he observed approximately 30 dogs. (Id. at ¶ 11).[4] Then, on February 17, 2017,

---

evidence." As explained in the advisory committee's notes, the objection functions much like an objection raised at trial, and the "burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2) advisory committee's note to 2010 amendment. Thus, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." Jones v. UPS Ground Freight, 683 F.3d 1283, 1293-94 (11th Cir. 2012) (internal quotation marks and citation omitted). The Court concludes that Defendants would be able to reduce the disputed evidence to an admissible form at trial. Accordingly, the Court overrules Plaintiff's hearsay objection to Owen's affidavit.

[4] Plaintiff disputes that Sergeant Horton or any of the other officers saw the number of dogs they claim to have seen. (Doc. 64, ¶¶ 10, 13-14). He also claims that because his property is enclosed by locked gates and fences, no person can observe the premises without entering. (Doc. 66, ¶ 4). Plaintiff further notes that

Owen received a call from Inspector Gail Roberts with the Georgia Department of Agriculture regarding a complaint she received about numerous dogs on McLeod's property. (Id. at ¶ 12).[5] Roberts also informed Owen that during an in-person encounter with McLeod she observed at least 15 dogs on the property without collars or vaccination tags. (Id. at ¶ 13).

Based on his own observations and the information gathered in the course of his investigation, Owen applied for a search warrant on February 22, 2017. (Id. at ¶ 14).[6] Owen also applied for arrest warrants for McLeod, charging him with cruelty to animals pursuant to O.C.G.A. § 16-12-4 and failure to provide proof of vaccinations pursuant to O.C.G.A. § 31-19-10. (Doc. 59-8). That same day, a Brooks County Magistrate Judge issued a search warrant authorizing the search of the property located at 1675 Liberty Church Road and the seizure of an undetermined number of dogs believed to have no access to fresh food and water and lacking proper vaccination tags. (Doc. 59-6). The Magistrate Judge made an independent probable cause determination:

Sergeant Horton served the legal documents sometime between May 2016 and July 2016, more than six months earlier. (Doc. 64, ¶ 14).

[5] Plaintiff claims that he requested information from the Georgia Department of Agriculture through an Open Records Request about any complaint received by Roberts. (Doc. 66, ¶ 13). According to Plaintiff, no record exists documenting the complaint. (Id.). However, Plaintiff does not deny that Roberts came to his home at some point. (Doc. 64 ¶ 16).

[6] The affidavit made in support of the search warrant application is not a part of the record. None of the parties was able to produce the document.

Based upon the affidavit given under oath or affirmation and all other evidence given to me under oath or affirmation, I am satisfied that there is probable cause to believe that a crime is being committed or has been committed and that the animals described above are presently located on the person, premises, curtilage, vehicles and property described above.

You are hereby commanded to enter, search and seize within ten (10) days of this date, the person, premises, curtilage, vehicles, and all property described above, and seize all animals. A copy of this Warrant is to be left with the person searched, or if no person is available, on the premises or vehicle searched, and a written return, including an inventory of any things seized, shall be made before me or a Court of competent jurisdiction without unnecessary delay after the execution of this Search Warrant.

(Id.). The Magistrate also issued warrants for McLeod's arrest. (Doc. 59-9).

Owen executed the search warrant on February 23, 2017. (Doc. 59-3, ¶ 15); Doc. 59-7). As a result of the execution of the search warrant, law enforcement officers seized 24 dogs and 10 puppies. (Doc. 59-7, p. 1). Officers additionally seized "1 green in color MOULTRIE brand Trail Camera containing a SD memory card." (Id.). McLeod was taken into custody and charged with numerous counts of cruelty to animals, aggravated cruelty to animals, and failure to provide proof of vaccinations. (Doc. 59-3, ¶ 19).

On April 24, 2018, McLeod filed a pro se Complaint in this Court, asserting a myriad of claims against 27 named individuals and John or Jane Does 1-50, who allegedly were involved in the execution of the search warrant and

numerous other events. (Doc. 1).[7] As McLeod sought to proceed with this lawsuit without payment of the Court's mandatory filing fee, the Court was required to conduct a preliminary screening of the Complaint and to dismiss any portion thereof that (1) was frivolous or malicious; (2) failed to state a claim; or (3) sought monetary relief against a defendant immune from such relief. 28 U.S.C. § 1915(e)(2). After painstakingly combing through McLeod's Complaint to discern the merit of his allegations, the Court dismissed the vast majority the claims. Only McLeod's § 1983 claims alleging violations of his Fourth Amendment rights remain against these Defendants:[8]

(1) <u>Defendant Mike Dewey</u>: McLeod alleges that Brooks County Sheriff Dewey violated his Fourth Amendment rights when the Sheriff "planned, ordered, orchestrated, executed and directly supervised the conduct of his deputies, agents and surrogates in conducting the February [23], 2017 search and seizure of McLeod's personal property including the seizure of all of McLeod's dogs without arguable probable cause, and the destruction of McLeod's dwelling." (Doc. 1, p. 8).

---

[7] Counsel for Plaintiff entered his appearance on August 12, 2019, following the filing of Defendants' motion for summary judgment. (Doc. 61).

[8] Four other Defendants remain party to this action: Robert Bruce, Mark Nichols, Clint Nichols, and Tylor Nichols. Each of these Defendants appears to have been properly served. (Docs. 43-45, 58).

(2) <u>Defendant Joe Wheeler</u>: McLeod alleges that Chief Deputy Wheeler "personally supervised and participated in the intrusive invasion of Plaintiff's privacy and the illegal search[,] seizure[,] and destruction of Plaintiff's property" and that during the execution of the invalid search warrant Wheeler demolished his fence and gates. (<u>Id.</u> at p. 9).

(3) <u>Defendant Eugene Owen</u>: McLeod alleges that Owen is the "investigator responsible for securing the invalid warrant and personally executing the search, seizure and destruction of Plaintiff's personal property and damage[ ] to his real estate." (<u>Id.</u>). Plaintiff contends that the search warrant was invalid and that the resulting search and seizure of his dogs was unconstitutional. (<u>Id.</u>).

(4) <u>Ed Melton</u>: McLeod alleges that Deputy Sheriff Melton participated in the search of his property and destroyed McLeod's real and personal property. (<u>Id.</u> at p. 10).[9]

(5) <u>Defendant Lonnie Doe</u>: McLeod alleges that Deputy Sheriff Lonnie Doe participated in the search and seizure of his property and that Doe "proceeded to make false statements under oath [to] cause Magistrate David Crosby to issue

---

[9] In his Complaint, McLeod additionally alleges that Melton "execute[d] an illegal arrest of Plaintiff for exercising his right to use his own personal driveway." (Doc. 1, p. 10). Plaintiff has produced no evidence concerning this claim; it is therefore **DISMISSED**.

a[] criminal trespass warrant to have Plaintiff falsely arrested and imprisoned for three days on a baseless charge." (Id. at p. 11).[10]

(6) Defendant John Ulm: McLeod alleges that Ulm, the jail administrator at the Brooks County Jail participated in the unlawful search and seizure of his property. (Doc. 1, p. 12).

(7) Defendant Willie Clemons: McLeod alleges that Clemmons is a Quitman City Police Officer and that during the raid on McLeod's property and the seizure of his dogs, Clemmons shot several of McLeod's dogs with tranquilizing darts. (Id. at p. 13).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[10] Defendants assert, and Plaintiff does not dispute, that Lonnie Doe "is an unknown individual who was not employed by the Brooks County Sheriff's Office at any time relevant to Plaintiff's Complaint." (Doc. 59-2, ¶ 7; Doc. 64, ¶ 7). Plaintiff's claims against Defendant Doe are therefore **DISMISSED**.

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation marks omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## III.  DISCUSSION

Plaintiff asserts Fourth Amendment claims under 42 U.S.C. § 1983 against Defendants in their individual capacities.[11] According to Plaintiff, the search warrant authorizing the search of his property was an unconstitutional general

_____

[11] Plaintiff sued Defendant Mike Dewey in both his official and individual capacity. However, the Court disposed of Plaintiff's official capacity claims in its screening Order. (Doc. 29, p. 16).

warrant and was not supported by probable cause. Plaintiff further contends that the seizure and destruction of his personal property was unreasonable. Defendants argue that the search warrant was properly issued and reasonably executed and that they are entitled to qualified immunity on Plaintiff's § 1983 Fourth Amendment claims and to official immunity on any state law claims presented by Plaintiff.

### A.    Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. It also provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be searched." Id. Generally, "a search is reasonable under the Fourth Amendment when supported by a warrant or when the search fits within an established exception to the warrant requirement." United States v. Prevo, 435 F.3d 1343, 1345 (11th Cir. 2006). A seizure is reasonable if it is supported by probable cause. Croom v. Balkwill, 645 F.3d 1240, 1246 (11th Cir. 2011) ("Traditionally, seizures by law enforcement have been reasonable under the Fourth Amendment only if justified by probable cause to believe that the detainee committed a crime.").

### 1.     Search Warrant

The Fourth Amendment requires that a warrant application contain enough information to establish probable cause. Holmes v. Kucynda, 321 F.3d 1069, 1083 (11th Cir. 2003). Probable cause is not a high bar and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Paez v. Mulvey, 915 F.3d 1276, 1286 (11th Cir. 2019) (internal quotation marks and citation omitted). "A substantial basis for probable cause exists where the totality of the circumstances set forth in the affidavit provides sufficient information for a magistrate judge to determine that there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Gonzalez, 940 F.2d 1413, 1419 (11th Cir. 1991) (quoting Illinois v. Gates, 462 U.S. 213, 238-39 (1983)) (internal quotation marks omitted). The magistrate judge issuing the warrant "must only make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and the basis of knowledge of persons supplying the information there is probable cause to issue the search warrant." United States v. Betancourt, 734 F.2d 750, 755 (11th Cir. 1984) (internal quotation marks omitted).

In his affidavit submitted in support of the motion for summary judgment, Defendant Eugene Owen outlines how the investigation into Plaintiff began.

(Doc. 59-3, ¶¶ 7-8).[12] He further describes the steps he took to investigate the citizen complaint that Plaintiff was keeping an excessive number of dogs on his property and to verify independently the information reported to the Sheriff's Office. (Id. at ¶¶ 9-13). Satisfied that probable cause existed to conduct a search of Plaintiff's property, Owen then applied for a search warrant on February 22, 2017. (Id. at ¶ 14). The affidavit submitted in support of the warrant application, however, is not a part of the record in this case.[13]

Plaintiff presumes that the information contained in Owen's affidavit filed in support of the motion for summary judgment reflects the information presented in the warrant application affidavit. (Doc. 63, p. 6). Based on that presumption, Plaintiff argues that Owen did not have probable cause to seek a search warrant. Plaintiff maintains that the affidavit contains conflicting information regarding the number of dogs observed on Plaintiff's property and the dates of the observations. (Id. at p. 7-9).[14] Plaintiff also asserts that the affidavit contains

---

[12] Defendants argue, and Plaintiff does not dispute, that Owen was the only officer involved in the procurement of the search warrant. Therefore, to the extent that Plaintiff's Complaint asserts claims against any of the other Defendants relating to the procurement of the warrant, those Defendants are entitled to summary judgment.

[13] The Court requested that the parties supplement the record with the search warrant affidavit. Defendants indicated to the Court that the original affidavit could not be located. Plaintiff also did not have a copy of the document.

[14] While Plaintiff points to what he perceives as inconsistencies in the information presented in Owen's affidavit, he does not specifically attack the veracity of the affidavit. Instead, he remarks that the search warrant application is "conclusory."

impermissible hearsay. (<u>Id.</u> at p. 8). Further, Plaintiff argues that there is no state law or county ordinance requiring vaccination tags; therefore, to the extent that the search warrant application was based on the absence of vaccination tags, there was no probable cause to issue the warrant. (<u>Id.</u> at p. 3).

"Affidavits supporting arrest warrants are presumptively valid." <u>United States v. Kapordelis</u>, 579 F.3d 1291, 1309 (11th Cir. 2009). The premise for this presumption is that when "the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause' the obvious assumption is that there will be a <u>truthful</u> showing." <u>Franks v. Delaware</u>, 438 U.S. 154, 164-65 (1978) (quoting <u>United States v. Halsey</u>, 257 F. Supp. 1002, 1005 (S.D.N.Y. 1966)) (emphasis in original); <u>see</u> <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1232 (11th Cir. 2004) ("[F]alsifying facts to establish probable cause is patently unconstitutional."). However, "[t]his does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon

_____

(Doc. 63, p. 10). Nevertheless, Plaintiff argues that a jury question exists concerning the existence of a <u>Franks</u> violation. Plaintiff's reliance on <u>Franks</u> in this context is misplaced. Under <u>Franks v. Delaware</u>, the Supreme Court explained that the Fourth Amendment requires that a hearing be held at the request of a defendant in a criminal proceeding "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." 438 U.S. 154, 155-56 (1978). As this is a civil case and not a criminal case, no independent hearing is required. Regardless, Plaintiff has not shown that Owen knowingly or intentionally provided false information to the magistrate judge.

hearsay and upon information received from informants, as well as upon information within the affiants own knowledge that sometimes must be garnered hastily." <u>Franks</u>, 438 U.S. at 165. The warrant affidavit

> must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter. If an informant's tip is the source of information, the affidavit must recite some of the underlying circumstances from which the informant concluded that relevant evidence might be discovered, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was credible or his information reliable.

<u>Id.</u> (internal quotation marks and citation omitted). "A law enforcement officer is not required to resolve every inconsistency found in the evidence." <u>Paez</u>, 915 F.3d at 1286. Nor are officers expected "to resolve legal questions or to weigh the viability of most affirmative defenses." <u>Id.</u>

While the Court suspects that facts and circumstances outlined in Owen's summary judgment affidavit very likely formed the basis for the warrant application affidavit, the Court hesitates to analyze the two as though they are the same. Even in the absence of the affidavit, however, the Court concludes that the face of the warrant sufficiently establishes that "other evidence given to [the magistrate] under oath or affirmation" established probable cause to issue the search warrant. <u>See</u> <u>Wallace v. Smith</u>, 297 F. App'x 915, 916 (11th Cir. 2008).

The Fourth Amendment "does not bar consideration of an affiant's oral testimony, extrinsic to the written affidavit, which is sworn before the issuing magistrate, in determining whether the warrant was founded on probable cause." Id. (quoting United States v. Hill, 500 F.2d 315, 320-21 (5th Cir. 1974)) (internal quotation marks omitted). "Reviewing courts must only ensure that the magistrate had a substantial basis for concluding that probable cause existed." Betancourt, 734 F.2d at 755. Accordingly, "[g]reat deference is accorded to the magistrate's determination of probable cause." Gonzalez, 940 F.2d 1419. The "traditional standard of review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." Wright v. Watson, 209 F. Supp. 3d 1344, 1366-67 (M.D. Ga. 2016) (quoting Gates, 462 U.S. at 236).

The search warrant issued by the magistrate judge in this case states:

> Based upon the affidavit given under oath or affirmation and all other evidence given to me under oath or affirmation, I am satisfied that there is probable cause to believe that a crime is being committed or has been committed and that the animals described above are presently located on the person, premises, curtilage, vehicles and property described above.

(Doc. 59-6). It is evident from this language that "other evidence" provided to the magistrate in addition to the affidavit provided a substantial basis for the magistrate judge to conclude that there was probable cause to issue the warrant.

15

The Eleventh Circuit has held that in the absence of evidence suggesting otherwise, this language is sufficient to establish probable cause to issue the warrant. <u>See</u> <u>Wallace</u>, 297 F. App'x at 916; <u>Windhom v. Hall</u>, No. 5:15-CV-380-MTT-CHW, 2016 WL 8679229, at *9 (M.D. Ga. July 29, 2016).

Plaintiff additionally contends that the search warrant was an unconstitutional general warrant. In order to be valid, a warrant must not only be based on probable cause, supported by an affidavit, but must also describe with particularity "the place to be searched" and "the persons or things to be seized." U.S. Const. Amend. IV. General warrants are prohibited by the Fourth Amendment. <u>Andresen v. Maryland</u>, 427 U.S. 463, 480 (1976). "The problem posed by the general warrant is not that of the intrusion [p]er se, but of a general, exploratory rummaging in a person's belongings. . . . The Fourth Amendment addresses the problem by requiring a particular description of the things to be seized." <u>Id.</u> (quoting <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 467 (1971)) (internal punctuation omitted). The prohibition against general warrants "makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." <u>Id.</u> (quoting <u>Stanford v. Texas</u>, 379 U.S. 476, 485 (1965)) (internal quotation marks omitted).

The search warrant here is not an improper general warrant. The warrant authorizes the following:

> You are hereby commanded to enter, search and seize within ten (10) days of this date, the person, premises, curtilage, vehicles, and all property described above, and seize all animals

(Doc. 59-6). The warrant identifies the property to be searched as

> 1675 LIBERTY CHURCH ROAD (Parcel 0021), 0 BEASELY ROAD (Parcel 0018), 0 BEASLEY ROAD – GROOVERVILLE ACADEMY (Parcel 0019), and 0 BEASELY ROAD – GROOVERVILLE METHODIST CHURCH (Parcel 0020).

(Id.). The warrant describes the animals to be seized as

> AN UNDETERMINED NUMBER OF DOGS WITHOUT VACCINATION TAGS AND AT LEAST ONE DOG CHAINED WITH NO VISIBLE SIGNS OF FRESH WATER AND FOOD.

(Id.).

The warrant adequately identifies both the property to be searched and what law enforcement officers are authorized to seize. Consequently, the warrant is not an impermissible general warrant as Plaintiff argues.

Accordingly, the Court finds that sufficient and undisputed material evidence exists that the warrant was based on probable cause. The Court further finds that the warrant properly identified the property to be searched and the things to be seized. Summary judgment for Defendants is therefore appropriate.

### 2. Seizure of Property

In addition to seizing 24 dogs and 10 puppies during the execution of the search warrant, law enforcement officers seized "1 green in color MOULTRIE brand Trail Camera containing a SD memory card." (Doc. 59-7, p. 1). Plaintiff argues that seizure of the trail camera exceeded the scope of the warrant. (Doc. 63, p. 1-2). According to Plaintiff, "[i]t was not immediately apparent that [the] camera [was] evidence of a crime." (Id. at p. 3).

"Under the plain view doctrine, the warrantless seizure of an item is permissible where (1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." United States v. Folk, 754 F.3d 905, 911 (11th Cir. 2014) (internal quotation marks and citation omitted). The second prong "merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband." Id. at 112 (quoting Texas v. Brown, 460 U.S. 730, 742 (1983)) (internal quotation marks omitted).

As explained above, law enforcement officers lawfully entered Plaintiff's property to execute a valid search warrant. During the seizure of the dogs, the object of the search warrant, officers also seized the trail camera. (Doc. 59-7, p.1). Defendant Owen stated in his supplemental affidavit that the camera was

"in plain view and in the vicinity of the dogs." (Doc. 69-1, ¶ 5).[15] Officers seized the camera because they thought it "likely to have captured and contained evidence of criminal activity by way of video and or still image." (Id.). The officers' belief that the camera potentially contained evidence concerning the condition and treatment of the dogs was reasonable. Therefore, seizure of the trail camera was not improper.

Plaintiff further avers that Defendant's seizure of Plaintiff's property was unreasonable as it "involved the ransacking of his evidence." (Doc. 63); see Dalia v. United States, 441 U.S. 238, 258 (1979) ("[T]he manner in which a warrant is executed is subject to later judicial review as to its reasonableness."). In his Complaint, Plaintiff alleged that Defendants collectively destroyed his "personal residence by seizing his personal papers [and] throwing his clothes outside to rot." (Doc. 1, ¶ 4; Doc. 66, ¶ 20). Plaintiff stated that Defendants stole his "sledge

---

[15] Plaintiff filed a Notice of Objection to Owen's supplemental affidavit, arguing that the Court should strike the affidavit "as being . . . vague and stating legal conclusions." (Doc. 70, ¶ 1); see Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) ("This Court has consistently held that conclusory allegations without specific supporting facts have no probative value."). Plaintiff also contends that the affidavit attempts to present new evidence without providing Plaintiff with the opportunity to respond. (Id. at ¶ 2). Plaintiff's motion to strike Owen's affidavit is **DENIED**. The second affidavit provides supplemental information directly in response to Plaintiff's argument that seizure of the trail camera exceeded the scope of the search warrant and does not otherwise contradict Owen's prior testimony. Further, Plaintiff did not assert any clear claim relating to the seizure of the trail camera in his Complaint. Defendants therefore had no notice of the claim prior to Plaintiff filing his response brief.

hammer and us[ed] it to pound large [holes] in his flooring, totally destroying the flooring" and then "proceeded to throw his personal papers and other property into the holes." (Id.). While Plaintiff attests that Defendants Owen, Wheeler, Ulm, and Clemons were involved in the execution of the search warrant, Plaintiff has failed to develop this claim. He has presented no evidence concerning the particular actions taken by any Defendant or regarding any specific property that was taken or destroyed by these Defendants. Plaintiff's assertion that his property was destroyed during the search standing alone is not enough to create an issue of fact regarding the reasonableness of the search of his property. See Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005) ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a motion for summary judgment"). Defendants accordingly are entitled to summary judgment on Plaintiff's claims relating to the seizure of his property.[16]

### 3.    False Arrest

Defendants move for summary judgment as to Plaintiff's claim for false arrest. Recognizing the deficiencies in the claim, which is more properly

---

[16] Plaintiff's Complaint also accused Defendant Clemons of shooting several of the dogs with tranquilizing darts. (Doc. 1, p. 13). Plaintiff has presented no evidence pertaining to this claim and has otherwise abandoned it. See Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("In opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him. . . . [G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

categorized as a claim for malicious prosecution,[17] Plaintiff withdraws his claim asks that it be dismissed without prejudice. (Doc. 63, p. 11). There being no objection from Defendants, Plaintiff's § 1983 claim for malicious prosecution is accordingly **DISMISSED without prejudice**.

### B. Qualified Immunity

"A government official who is sued under § 1983 may seek summary judgment on the ground that he is entitled to qualified immunity." <u>Crosby v. Monroe County</u>, 394 F.3d 1328, 1332 (11th Cir. 2004). Qualified immunity offers complete protection for government officials sued in their individual capacities "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). Accordingly, qualified immunity "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009). "When properly applied, [qualified immunity]

---

[17] To prove a § 1983 malicious prosecution claim, under both federal law and Georgia law, a plaintiff must establish the following: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." <u>Kjellsen v. Mills</u>, 517 F.3d 1232, 1237 (11th Cir. 2008). Because the charges against Plaintiff remain outstanding, Plaintiff's claim for malicious prosecution is premature.

protects all but the plainly incompetent or those who knowingly violate the law."

Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (internal quotation marks omitted).

To receive qualified immunity, the official first must "prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). "[D]iscretionary authority [ ] include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994). Here, there is no dispute that Defendants were acting within their discretionary authority when they obtained and executed the search warrant.

Once the official establishes that he was engaged in a "discretionary function," the burden shifts to the plaintiff "to show that the defendant is not entitled to qualified immunity." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004) (emphasis in original). To demonstrate that the official is not entitled to qualified immunity, the plaintiff must show (1) that the official violated a constitutional right; and (2) that the constitutional right violated was "clearly established" at the time of the alleged violation. Saucier v. Katz, 533 U.S. 194, 201 (2001); Holloman, 370 F.3d at 1264.

Plaintiff has not met his burden of demonstrating a violation of a constitutional right. The undisputed facts show that the search warrant authorizing the search of Plaintiff's property and the seizure of the dogs was supported by probable cause, and the ensuing search of Plaintiff's property was reasonable. Defendants accordingly are entitled to qualified immunity.

### C.    Official Immunity

The nature of any state law claims Plaintiff intends to pursue against Defendants is not entirely clear from either the Complaint or Plaintiff's response to Defendants' motion for summary judgment. To the degree that Plaintiff intends to assert state law claims, Defendants are entitled to official immunity.

The doctrine of official immunity "offers public officers and employees limited protection from suit in their personal capacity." <u>Cameron v. Lang</u>, 274 Ga. 122, 123 (2001). A suit against a governmental employee sued in his individual capacity "is barred by official immunity where the public official has engaged in discretionary acts that are within the scope of his or her authority, and the official has not acted in a willful or wanton manner; with actual malice; or with the actual intent to cause injury." <u>Brown v. Penland Constr. Co.</u>, 281 Ga. 625, 625-26 (2007); <u>see also</u> Ga. Const. of 1983, Art. I, Sec. II, Par. IX(d). Because there is no dispute that Defendants were acting within their discretionary authority when they sought and executed the search warrant, the burden shifts to Plaintiff to

show that Defendants acted with actual malice. See <u>Adams v. Hazelwood</u>, 271 Ga. 414 (1999).

In the context of official immunity, "actual malice" requires "a deliberate intention to do wrong." <u>Bateast v. DeKalb County</u>, 258 Ga. App. 131, 132 (2002). A "deliberate intention to do wrong" means "the intent to cause the harm suffered by the plaintiff[ ]." <u>Murphy v. Bajjani</u>, 282 Ga. 197, 203 (2007). Similarly, "actual intent to cause injury" requires "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." <u>Kidd v. Coates</u>, 271 Ga. 33 (1999). "Our task is not to decide, with the benefit of hindsight, what the officers should have done. We are concerned only with whether their behavior showed a deliberate intent to commit a wrongful act." <u>Selvy v. Morrison</u>, 292 Ga. App. 702, 707 (2008).

Plaintiff has offered no evidence of actual malice or any deliberate intention to do wrong by any Defendant. Accordingly, the Court finds that Defendants are entitled to official immunity and grants summary judgment as to Plaintiff's state law claims.

## VI.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. (Doc. 59).

**SO ORDERED**, this the 2nd day of April, 2020.

_s/ Hugh Lawson_____
**HUGH LAWSON, SENIOR JUDGE**

aks